Good morning, your honors. I'm John Hart. I live and I work in Missoula, Montana, and along with my partners Bill Rosbeck and Tim Bechtel, we represent Louis Card. Well, it's much warmer here in Seattle than it is in Montana, but overall I think I am fortunate. Louis Card was an employee at the Columbia Falls Aluminum Company from 1985 until he retired in 1993. In 1992, a class action was filed on behalf of all employees at that company. The class action alleged improper distribution of profits under a profit-sharing plan, and the lawsuit was ultimately settled on January 22, 1998. The parties that settled that lawsuit, including the defendant in this case, Brack Duker, specifically excluded Louis Card from the settlement and receiving any proceeds of the settlement. Did Card administer the fund for the program, whatever it was? No, he did not. Louis was the employee relations manager, so he played an integral role in the, in some aspects of the profit-sharing plan and in dealing with employees in that regard. Louis filed suit in 1999 alleging exactly the same subject matter as the class action. So the class action was filed when? The class action was filed in 1992, and it was settled in 1998. Excuse me. The subject matter being improper distribution of profit-sharing. Louis' suit included two causes of action, a RICO claim and a common law fraud claim that were not class claims in the earlier class action. And I'm going to refer to that class action as the Gilmore class action. The single narrow issue on appeal in this case is whether the statute of limitations on those RICO and fraud claims were equitably tolled by the Gilmore class action, even though, again, that class action did not allege those causes of action. The United States Supreme Court has said that equitable tolling has never said that equitable tolling requires exactly the same causes of action. And, in fact, in American Court of Appeals in 1983, the Court said that individual suits that raise claims that concern the same evidence, memories and witnesses as the subject matter of the original class suit are tolled during the pendency of the class action. Counsel, was Mr. Card a member of the class as defined in the order of, I think, July 1994 that certified the Gilmore class? The Gilmore class certified a class for all salaried employees of the Columbia Falls Aluminum Company. Louie Card was a salaried employee of the Columbia Falls Aluminum Company. But that has never been judicially determined. The district court ---- Even though he was not provided for in the settlement? Correct. That is absolutely correct. So he was relying on being a member of the class? Yes. And that's your theory, and it was settled and excluded him, so now he's bringing his claims? Exactly. Now, even though Louie's lawsuit concerned exactly the same evidence, the same subject matter of profit sharing, you know, was his complaint exactly the same as the Gilmore class complaint? Absolutely not. It wasn't. It was different. And it was different primarily because in Louie's complaint, he talked about written employment agreements that he had that were signed by Brack Duker. And the reason he included those allegations in his complaint is because those written employment contracts memorialized his right to profit sharing, and they also showed how Mr. Duker used the U.S. mails and the wires to negotiate the terms of Card's right to profits. But those aren't the only instances in Louie's complaint that will be used to prove the RICO and fraud claims. And I apologize. I didn't do a good job in my reply brief in pointing these out. I want to point them out now. Please look at the record at page 64 and page 72. And I'm referring to Louie's complaint in the record. Look at paragraphs 18 and paragraph 37, where it – where we – the U.S. mail by Brack Duker that we allege are misleading statements about profit sharing. I'm sorry. It's page 64 of the complaint? Page 64 of the excerpt and then page 72. And his complaint starts at page 65, or am I missing something? Boy, I'm sorry. Page 67. I'm sorry. It's page 68. Paragraph 18 of the complaint on page 68 of the excerpt. And then I am right. Page 72 at paragraph 37. He talks about other documents that were mailed by Duker that were misleading and fraudulent statements about the profit sharing plan. Now, those are only two examples that he listed in the complaint. Let me go back to the class action for a minute. Did he ever have a chance to opt in or elect out of the class? No, he did not. He was a mandatory class, not an opt-in. Louie was not given the opportunity to opt out. He never received correspondence from class counsel giving him the opportunity to opt out. But he – I thought his – the evidence shows that he didn't know whether he was a member of the class or not. He did not know if he was a class member or not, because he didn't read the class complaint. He didn't – Did he have notice of the class action? Yes. He was very much aware of the class action. And it's not in the record, but he received correspondence at some point in time from class counsel to him addressing him as a salaried class member. The way the class certification described it is that everyone who was not subject to a collective bargaining agreement was a member of the class. Was he subject to a collective bargaining agreement? No, and that's confusing, Your Honor. There were two separate classes in the Gilmore case. There was – well, there were two separate class actions consolidated together. One of the class actions was on behalf of union employees subject to a collective bargaining agreement. The second class action, the Gilmore class action, was on behalf of salaried employees of the Columbia Falls. And that's him. And that is him. And those lawsuits were consolidated together for purposes of that prior proceeding. But did your client ever contact counsel for the class? No. Did he ever do anything in order to – in order to ascertain what his rights might have been before he – his status with respect to the class before he filed suit or before the settlement? No, he did not. But under the American Pipe rule, he doesn't have to take any affirmative action in order to be protected by that class action. Well, I thought the people in American Pipe were members of the class, and then the class was decertified, so they were permitted to sue. Yes. That's – American Pipe, as I recall, dealt with interveners. I mean, what is troubling me is whether your client had – really was reasonable in relying on the class as protecting him. He was a salaried employee of the Columbia Falls aluminum company. The class was brought on behalf of those people. He was – I take the position that he reasonably was able to rely on them. We have used your time. We'll hear from you. Good morning, Your Honors. May it please the Court. Michael Fitz on behalf of Defendant and Appellee Brack Duker. I'd like to make a few preliminary points in response to the argument that was just heard. First of all, the appellant, Lewis Card, conceded in his brief, and this is at page 2, footnote 2, that it was at the request of class counsel that Lewis Card was excluded from participation in the settlement proceeds. My client had nothing to do with his exclusion or his inclusion. He was agnostic. He was ready to settle with whatever the class was. Also, I think it's very important, just so that we know what we're comparing when we talk about the class claim versus Mr. Card's claim, that the individual class representative, Roberta Gilmore, was the one who brought the common-law fraud claims, tortious breach of contract claims. The only class claim was a claim to – for declaratory relief to determine really what profit meant under this profit-sharing plan. That was the big dispute. And then sought equitable relief. In fact, Brett Duker, as to that portion of the class complaint, was really defendant only for equitable reasons to the extent that constructive trust had to be imposed if profits were, in fact, improperly distributed. Counsel, here's where it confuses me a little bit. And obviously, you have lived with the details of this a lot longer than I have. It appears that the plaintiff here was a member of the class, but he did not participate in the settlement. And to the extent that his claims now are the same as the class claims, which mostly they're not, but to the extent they are the same, would they be – why wouldn't they be told? We would submit the record as clear that the claims that Mr. Card brought against Mr. Duker personally have nothing to do with the equitable claim brought against the company that Mr. Card was a majority shareholder in, CAFC, for proper distribution of profits. That's essentially a contract claim. I understand that. Yeah. But it seems to me that it's possible to read his complaint as at least minimally overlapping with the earlier case. To the extent that he's arguing an individual contract that was never a class claim, that's one thing. That's to one side. He had his own presumably statute of limitations to deal with on those claims. Correct. If there is overlap, wouldn't it be told? The contract claim in Mr. Card's action was brought against the company, not against Mr. Duker. The only claims that were brought against Mr. Duker sounded essentially in tort, and a Federal version of tort, really civil RICO, which was the Federalized version of his common law fraud claim. And these claims involved really Mr. Duker's mental state when he entered into a series of contracts that were entirely alien to the original class action, whether or not he entered into these contracts with fraudulent intent. So not only were the underlying historical facts, i.e., establishing the existence of the contracts, completely different and alien from the class claim, but the ultimate facts that needed to be proved, that needed to be proved to establish the civil RICO claim and the underlying fraud claim were completely different from the ultimate facts that needed to be established in the underlying and in the class claim. In fact, the class claim really required a determination of a legal issue based on, really, what was profit? How did the profit properly distributed? And that underlying class claim did relate to Mr. Card's tort claim, but only to the extent that it established a measure of damages, but the predicate violations that would entitle Mr. Card to damages had nothing to do with that prior class claim, and, in fact, Mr. Card's trial counsel conceded this, and you'll see it at supplemental excerpts of record, page 4, I believe. Well, to the extent that there may have been some overlap, this is a little confusing. He was excluded from the class. From the settlement. From the settlement, excuse me, expressly. If his claims are totally different, why would he have been excluded, or is that the problem? That was the class counsel who did that? Is that the? Yes. If he's got a gripe, he should go talk to class counsel? Yes. As Mr. Card's appellate's brief indicates, it was at the request of class counsel, and it made no difference to Mr. Duker how the class decided to arrange itself. It was really not his business. And so the whatever claims he may have had against the class for improperly excluding him are not germane to a tort action against Mr. Duker personally for fraud. They're just, these are, they're not just different species of claims or different genus or phylum. They're different families of claims, and they really have nothing to do with each other, and if the American Pipe Doctrine has any meaning, it cannot possibly toll the statute of limitations on a claim that is so fundamentally different, has historically different facts, requires different ultimate facts, asks for different theories of relief, and, in fact, has different primary defendants. In the class claim, the primary, the entity with the legal duty to distribute the property was CAFC. In the Card individual claim, it was Mr. Duker who had the duty not to commit fraud against other people. In fact, fraud was there. I'd like to point out, though, that there has never been an adjudication against Mr. Duker that he's acted in any way improperly. And to the extent that I know that Appellant's reply brief makes some notion where the equities should include the fact that, well, Mr. Duker did something wrong. The prior class claim was settled, and nobody admitted to any wrongdoing. Was Duker a party to that? To the settlement agreement? Yeah. He signed the settlement agreement, but he did not in his capacity. In his capacity. He was not a defendant in the class action? Yes, he was. Or was it? He was a defendant, but he was. And he signs his name. The settlement doesn't have a title under his name. He simply – in fact, Columbia Falls is signed by someone else. But he signs just under his own name. I know it's not clear. My understanding is, to the extent that this document provides a clear understanding, is that the duty to distribute the profits, the profits accrued to Columbia Falls Aluminum Company, or I'm sorry, yeah, Columbia Falls Aluminum Company, that was the But in any event, it still was an action to declare the relative rights of the parties, impose a constructive trust. My understanding is that Mr. Duker had already received these profits, and so to the extent that they were improperly distributed, a constructive trust was necessary as a remedy to ensure that the money was there in case there was a mistake or some illegality. So just to sum up, the American Pipe Doctrine is actually quite strict, because if there is – if the rule of American Pipe is that if there is some factual relation, I mean, almost using a Venn diagram, you know, maybe there's a few common facts, or maybe there's some logical relation between the theories, and that's enough to toll the statute of limitations for that subsequent claim, then the very evil that Justice Powell in the concurrence in which Justice Rehnquist and Justice Kagan, in their long-sale claims, 9 years old, based on new facts that were not relevant, no notice. And this is the kind of case where that kind of abuse is readily apparent if this is, in fact, tolled under the American Pipe Doctrine. I have 19 seconds left, so is there any questions? Kagan. You don't have to use them. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the
judges: Schroeder, Goodwin, Graber